UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>PRITCHETT FARMS, INC., et al.,<br><br>        Defendants. | No. CV-07-3090-FVS<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT |

**THIS MATTER** is before the Court for a hearing, without oral argument, on Plaintiff's June 6, 2008 motion for summary judgment. (Ct. Rec. 27). Plaintiff is represented by Frank A. Wilson, and Defendants Pritchett Farms, Inc., DeWight N. Pritchett and Lillian A. Pritchett ("Defendants") are represented by J. Jarrette Sandlin.

Defendants have failed to respond to Plaintiff's motion for summary judgment. A response was due no later June 17, 2008. Local Rule 7.1(c) (11 calendar days for a response computed from June 6, 2008). Defendants have not requested additional time in which to respond or otherwise contacted the Court with respect to this motion. There is no stipulation or order of record extending the response time. Accordingly, Defendants are in default with respect to Plaintiff's motion for summary judgment. As such, the Court need not wait until October 14th to address this matter.

ORDER . . . - 1

Local Rule 7.1(h)(5) holds that "[a] failure to timely file a memorandum of points and authorities in support of or in opposition to any motion may be considered by the Court as consent on the part of the party failing to file such memorandum to the entry of an Order adverse to the party in default." In addition, pursuant to Local Rule 56.1(d), the failure to file a statement of specific facts in opposition to a motion for summary judgment allows the Court to assume the facts as claimed by the moving party exist without controversy. Defendants, the non-moving parties, have not filed a statement of material facts.

With this in mind, the Court shall now address Plaintiff's pending, uncontested motion for summary judgment.

**BACKGROUND**

This lawsuit is brought by the United States, acting on behalf of Farm Service Agency ("FSA")[1], to collect a Farm Loan Program indebtedness and foreclose a real estate mortgage and security agreement executed in favor of FSA by Defendants.

**DISCUSSION**

**I. Summary Judgment Standard**

A moving party is entitled to summary judgment when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265, 273-74 (1986). A material fact is one "that might affect the

---

[1] FSA is a "last resort" lender whose loan programs provide "social welfare for farmers." *United States v. Ellis*, 714 F.2d 953, 955-956 (9th Cir. 1983).

ORDER . . . - 2

outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact may be considered disputed if the evidence is such that the fact-finder could find that the fact either existed or did not exist. *See id.* at 249, 106 S.Ct. at 2511 ("all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury . . . to resolve the parties' differing versions of the truth" (quoting *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968))).

The party moving for summary judgment bears the initial burden of identifying those portions of the record that demonstrate the absence of any issue of material fact. *T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). Only when this initial burden has been met does the burden of production shift to the nonmoving party. *Gill v. LDI*, 19 F. Supp. 2d 1188, 1192 (W.D. Wash. 1998). Inferences drawn from facts are to be viewed in the light most favorable to the non-moving party, but that party must do more than show that there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).

**II. Discussion**

Plaintiff contends there are no issues of material fact in dispute with respect to each element of its claim and, based on the undisputed facts, it is entitled to judgment as a matter of law. (Ct. Rec. 28). The undersigned agrees.

ORDER . . . - 3

"Ordinarily, suits on promissory notes provide 'fit grist for the summary judgment mill.'" *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1023 (5th Cir. 1995), *quoting, FDIC v. Cardinal Oil Well Servicing Co.*, 837 F.2d 1369, 1371 (5th Cir. 1988). In order to prevail in a summary judgment motion, Plaintiff "need not prove all essential elements of a breach of contract, but only must establish the note in question, that [Defendants] signed the note, that the [Plaintiff] was the legal owner and holder thereof, and that a certain balance was due and owing on the note." *Id.* (citation omitted). Accordingly, suits to enforce promissory notes are among the most suitable classes of cases for summary judgment.

The elements of proof necessary to recover on a promissory note are straightforward and are found in Plaintiff's complaint and the record on summary judgment.

### A. The Note

Defendants executed and delivered the promissory note at issue in this lawsuit to Plaintiff. On December 17, 2004, Defendants gave FSA a one-year note which by its express terms matured on December 17, 2005. (Ct. Rec. 29-2 ¶ 2 & Exh. A). The promissory note evidences a loan in the amount of $200,000, which was disbursed to Defendants in various amounts over a five-month period. *Id.*

### B. Security

The promissory note is secured by Defendants' duly recorded mortgage, perfected security agreement, and mobile home.

On or about December 17, 2004, for purposes of securing the payment of the promissory note, Defendants executed and delivered to

FSA a real estate mortgage.  (Ct. Rec. 29-2 ¶ 3).  To further secure the payment of the promissory note, Defendants signed a security agreement covering calves and farm equipment.  (Ct. Rec. 29-2 ¶ 4).  Said security agreement was perfected by a financing statement filed on December 13, 2004.  (Ct. Rec. 29-2 ¶ 4).  FSA also obtained a Vehicle Title Application/Registration Certificate covering Defendants' mobile home.  (Ct. Rec. 29-2 ¶ 5).

### C.  Holder

FSA is the holder of the promissory note as well as the mortgage, security agreement, and Vehicle Title Application/Registration Certificate.  (Ct. Rec. 29-2 ¶ 6).

### D.  Default

Defendants are in default and the mortgage and security agreement provide for foreclosure on default.

FSA received the Rojas Defendants' Notice of Intent to Forfeit on November 14, 2005.  This forfeiture action placed Defendants in default of Mortgage Covenant 4, which provides: "Borrower shall pay when due all taxes, liens, judgments, encumbrances and assessments." (Ct. Rec. 29-2 ¶ 7).  Under Mortgage Covenant 37, Defendants agreed that should default occur, Plaintiff could "(a) declare the entire amount unpaid under the note . . . immediately due and payable [and] (d) foreclose this instrument and sell the property as prescribed by law[.]"

Defendants were also in material default on their loan contract insofar as FSA made its $200,000 loan based on Defendants' representation that they would buy 80 pound calves, feed them and sell

ORDER . . . - 5

them four months later when they reached 350 pounds.  (Ct. Rec. 29-2 ¶ 8).  There has been no accounting of the loan proceeds.  If Defendants acquired calves as represented, they sold the calves without FSA's approval in violation of the Security Agreement which covers "all livestock" and provides that the debtor "not abandon the collateral or encumber, conceal remove, sell or otherwise dispose of it or any interest in the collateral, or permit others to do so, without the prior written consent of Secured Party . . . ."  (Ct. Rec. 29-2 ¶ 9).  The Security Agreement also provided that upon default, the Secured Party may "declare the unpaid balance on the note . . . immediately due and payable . . . ."  (Ct. Rec. 29-2 ¶ 9).

Defendants did not respond to a FSA letter dated November 16, 2005, memorializing Defendants failure to account and demanding Defendants either turn over $200,000, the appraised value of the calves, or replace the calves.  (Ct. Rec. 29-2 ¶ 10).

**E.   Notice and Acceleration**

Plaintiff complied with applicable servicing regulations and duly accelerated the account.

Under the Agricultural Credit Act, FSA has the burden of proving that, before accelerating Defendants' loan account and bringing this action, it gave Defendants notice of loan servicing programs and the opportunity to administratively appeal the notice or its denial of loan servicing.  7 U.S.C. §§ 1981d, 2001(g).  With regard to loan servicing, "[a]pplication kicks off an administrative process that, including appeals, may be lengthy; during all this time the borrower remains in possession of the farm."  *United States v. Einum*, 992 F.2d

761, 762 (7th Cir. 1993). Before FSA can accelerate an FLP loan, foreclose, or take any other collection action, it must provide notice to the borrowers. 7 U.S.C. §§ 1981d(a), 1981d(d).

Prior to acceleration, FSA sent the required servicing notices to Defendants and gave them the opportunity to appeal as required by law.[2] (Ct. Rec. 29-2 ¶¶ 11-12). Despite being personally notified that a servicing application must be turned in within 60 days in order to be considered for eligibility in loan servicing programs, Defendants made no effort to avail themselves of their administrative remedies. (Ct. Rec. 29-2 ¶ 13). FSA properly accelerated the account on May 9, 2006, a date four months after the servicing application was due and five months after the loan matured. (Ct. Rec. 29-2 ¶ 13).

**F.  Sum Owing**

Defendants owe a sum certain to Plaintiff. As of April 14, 2008, Defendants owe, under the terms of the promissory note, $229,851.84 ($208,361.00 principal, $21,490.84 interest), with interest accruing thereafter at the daily rate of $22.1205 until judgment and at the judgment rate thereafter. (Ct. Rec. 29-2 ¶ 14).

**G.  Interests of Others**

The interests of other Defendants, except the Rojas Defendants, are inferior. The creditor first in time to record is first in right. FSA's Litigation Guarantee shows Defendants State of Washington, Cargill, and Cereal Byproducts Company recorded liens against

---

[2] The notices provided the following reasons for Defendants' default: (1) they disposed of FSA security (calves) without the agency's written approval, (2) prior lien holders Richard W. and Charlene K. Rojas had filed foreclosure against them, and (3) they had not paid their property taxes. (Ct. Rec. 29-2 ¶ 11).

ORDER . . . - 7

Defendants' real property in 2005 and 2006, after FSA recorded its mortgage on December 20, 2004. (Ct. Rec. 29-2 ¶ 15).

Based on the foregoing, **IT IS ORDERED as follows**:

1. Plaintiff's June 6, 2008 motion for summary judgment **(Ct. Rec. 27)**, is **GRANTED**.

2. Plaintiff is entitled to foreclose its interests in the subject property.

3. All net cash sale proceeds shall be first applied to the entire indebtedness owed to the Rojas Defendants by the Pritchett Defendants.

4. All remaining sale proceeds shall be next applied to the entire indebtedness owed to Plaintiff by the Pritchett Defendants, with the Pritchett Defendants entitled only to proceeds remaining in surplus, if any, after Plaintiff's judgment is satisfied.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order, provide copies to counsel, **enter judgment in favor of Plaintiff** and **close the file**.

**DATED** this ___17th___ day of September, 2008.

S/Fred Van Sickle
Fred Van Sickle
Senior United States District Judge
